**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| OPTION ONE MORTGAGE CORPORATION, | CIVIL ACTION No. 3:07-cv-1877 |
| Plaintiff, | (JUDGE CAPUTO) |
| v. | |
| KEVIN FITZGERALD, ET AL., | |
| Defendants. | |

**MEMORANDUM**

Now before the Court are two motions made by Defendant NBT Bank concerning the appropriate scope of discovery in this case. First, is Defendant's "Motion to Compel Discovery, Motion for Sanctions, Motion for Attorney Fees" (Doc. 72) filed on January 13, 2009. Second, is Defendant's "Motion for Allowance to Serve Supplemental Discovery Requests Upon Plaintiff" (Doc. 77) filed on January 22, 2009. For the reasons detailed in this memorandum, both motions will be denied.

The Court has jurisdiction in this matter pursuant to 28 U.S.C. § 1332.

**BACKGROUND**

On or about January 11, 2006, property owned by Kevin and Jacqueline Fitzgerald ("the Fitzgeralds") sustained fire damage. (Am. Compl., Doc. 48 ¶ 12.) In accordance with the terms and conditions of a mortgage they had entered with Plaintiff Option One Mortgage Corporation ("Option One"), the Fitzgeralds had a hazard insurance policy for damage to the property. (*Id.* ¶ 10.) As a result of the fire damage to the property, on May 23, 2006, the Fitzgeralds' insurer, Nationwide Insurance, issued a loss draft check in the amount of

one hundred thirteen thousand, six hundred thirteen dollars ($113,613.00). (*Id.* ¶ 13.) This check was made payable to "Kevin Fitzgerald and Jacqueline Fitzgerald and Option One Mrtg. Corp." (*Id.*; Check, Doc. 1, Ex. 2.) This check was endorsed by the Fitzgeralds, and on or about June 28, 2006, Defendants NBT Bank, N.A. ("NBT") and JP Morgan Chase Bank, N.A. ("JP Morgan") both honored the check, even though it had not been endorsed by Option One. (Am. Compl. ¶¶ 17-22.)

On October 16, 2007, Option One filed its Complaint (Doc. 1) with this Court alleging four (4) counts of conversion and fraud against the Fitzgeralds, NBT, and JP Morgan. On November 3, 2008, this Court granted Option One's motion to amend the original Complaint. (Doc. 47.) The Amended Complaint (Doc. 48) included an additional, fifth count against the Fitzgeralds for breach of contract. In November of 2008, Defendants NBT Bank, N.A. and JP Morgan Chase Bank, N.A. filed Answers to Option One's Amended Complaint that included numerous cross claims against all Defendants. (Docs. 54, 55.) On December 10, 2008, NBT Bank, N.A. and JP Morgan Chase Bank, N.A. mutually withdrew the cross claims brought against each other without withdrawing the cross claims brought against the Fitzgeralds. (Doc. 57.)

On January 13, 2009, NBT filed the present "Motion to Compel Discovery. Motion For Sanctions, Motion for Attorney Fees." (Doc. 72.) Therein, NBT states that, in 2007, NBT served Option One with a document request and set of interrogatories, and that Option One's responses to these discovery requests "consist largely of blanket objections" and "do not provide the requested information or documents." (*Id.* ¶¶ 1-3.) NBT, thus, requests that this Court order Option One to provide all of the supplemental document productions and interrogatory replies identified in the motion, and requests that the Court impose sanction

against Option One for all of NBT's costs and fees associated with the preparation and filing of the present motion. (*Id.* ¶ 48.)  On January 22, 2009, NBT filed the second present "Motion for Allowance to Serve Supplemental Discovery Requests Upon Plaintiff." (Doc. 77.) In this motion, NBT reiterates those arguments pertaining to Option One's responses to NBT's discovery requests originally made in its January 13, 2009 motion, argue that discovery has raised new issues, and that statements made by the Fitzgeralds during depositions "cast this case in a whole new light, and raise questions concerning: whether the Plaintiff knew of and consented to the use of the insurance funds by Mr. Fitzgerald; whether Plaintiff ever objected to Mr. Fitzgerald's use of the insurance check proceeds; and, whether Plaintiff was negligent in its monitoring and/or involvement with the insurance repairs." (*Id.* ¶¶ 6-9.)  As a result, NBT requests that this Court enter an order allowing NBT to serve supplemental discovery requests upon Option One.  (*Id.* ¶ 15.)

NBT filed its brief in support of its motion to compel discovery on January 22, 2009 (Doc. 79), Option One filed its brief in opposition on January 23, 2009 (Doc. 80), and NBT filed a reply brief on February 4, 2009 (Doc 92).  Likewise, NBT filed a brief in support of its motion to serve supplemental discovery requests on February 4, 2009 (Doc. 93) and Option One filed a statement of facts (Doc. 95) and opposition brief (Doc. 96) on February 10, 2009.  On February 20, 2009, the Court heard oral argument concerning both motions from counsel for NBT and Option One. (Feb. 20, 2009 Transcript, Doc. 100.)  As these motions have been thoroughly briefed and argued, they are currently ripe for disposition.

## LEGAL STANDARD

Rule 26(b)(1) of the Federal Rules of Civil Procedure provides:

> Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter.  For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action.  Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. . .

It is critical to note that the discovery shall be "relevant to the claim or defense of any party" or that "for good cause" the court may order discovery of any matter relevant to the subject matter involved in the action."  As to the latter, relevancy is broader than the former.  In the latter, "relevant information" need not be admissible or relevant to the "claim or defense" if the discovery "appears reasonably calculated to lead to the discovery of admissible evidence."  In the former, it must be relevant to the claim or defense.  This structure of Rule 26(b)(1) is the result of amendment in 2000.  Instead of all discovery being relevant to the subject matter of the action, i.e. reasonably calculated to the discovery of admissible evidence, it must now be relevant, and therefore admissible at trial or if good cause is shown, the court may order discovery if it is relevant to the "subject matter" of the action, i.e. reasonably calculated to lead to the discovery of admissible evidence.

Under Federal Rule of Civil Procedure 37, a party who has received evasive or incomplete discovery responses may seek a court order compelling additional disclosure or discovery.  "The party seeking the order to compel must demonstrate the relevance of the information sought.  The burden then shifts to the opposing party, who must demonstrate in specific terms why a discovery request does not fall within the broad scope of discovery or is otherwise privileged or improper." *Paluch v. Dawson*, No. 1:CV-06-1751,

2007 WL 4375937, at *2 (M.D. Pa. Dec. 12, 2007).

## DISCUSSION

I. **NBT's Motion to Compel Discovery**

In its motion to compel, Defendant NBT offers several arguments why the Court should require Option One to further respond to NBT's discovery requests. First, NBT makes a generalized complaint that Option One's answers to various interrogatories have primarily consisted of blanket objections. NBT further argues that Option One's provision of documents was limited to "Plaintiff's extremely narrow interpretation of the issues relevant to this case" and has "wholly disregarded NBT's pleaded Affirmative Defenses and Counterclaims." (Def.'s Br. in Reply, Doc. 92, at 5.) In response, Option One argues that the current case "involves the cashing (conversion) of a check and that "[t]he information that the Defendant is seeking is not relevant to the instant action, but only sought in bad faith to annoy, embarrass, or cause undue burden on Plaintiff." (Pl.'s Br. in Opp., Doc. 80, Ex. 1 at 10.)

On February 20, 2009, counsel for both NBT and Option One appeared before the Court for oral argument on NBT's motion to compel. During the course of this argument, counsel for NBT represented that the interrogatories submitted to Option One that are the subject of the present motion to compel were drafted by NBT's prior counsel. (Feb. 20, 2009 Transcript, at 14:23-15:19.) The Court questioned NBT's counsel concerning these interrogatories and, after acknowledging that some of these original interrogatories were not on-point and relevant to the current case, counsel agreed that answers to these interrogatories was unnecessary in the event that Option One, provided responses to the

5

supplemental interrogatories submitted by NBT. (*Id.* at 16:11-21.) At the conclusion of arguments, the Court asked, and NBT's counsel confirmed, that responses to the supplemental interrogatories and document requests would obviate the need for further response from Option One concerning the original interrogatories and document requests. (*Id.* at 42:3-6.)

In summary, counsel for NBT has represented that the original document requests and interrogatories were, in several cases, not "on-point" and superceded by the supplemental interrogatories and document requests drafted as the discovery process progressed. Moreover, after a review of both the original and supplemental requests made by NBT, the Court believes that the original requests are largely represented and included in the supplemental requests. Since the original discovery requests sought information that NBT admits is not relevant, and since the supplemental requests are largely inclusive of the information sought in NBT's original requests, the Court will deny NBT's Motion to Compel Discovery from Plaintiff Option One.

**II.     NBT's Motion For Sanctions and Attorney Fees**

In addition to its Motion to Compel Discovery, NBT asks the Court to impose sanctions on Option One in the full amount of NBT's legal fees and costs required to draft, file, argue and prosecute the motion to compel discovery. Since the Court will deny NBT's Motion to Compel Discovery, NBT is not entitled to this relief and the Court will also deny NBT's motion for sanctions and attorney's fees.

**III.    NBT's Motion For Allowance to Serve Supplemental Discovery Requests and Supplemental Interrogatories**

In the brief supporting its motion to serve supplemental discovery, NBT first argues

that it should be entitled to "probe what would have happened differently if [Option One had] signed the Check, and how [Option One] has been damaged by the use of the Check's proceeds for their intended purpose of repairing the Fitzgerald's [sic] house." (Def.'s Br. in Supp., Doc. 93, at 3.)  NBT argues that this additional discovery is warranted due to new facts arising out of the depositions of Thomas Senor, a Supervisor for Nationwide Insurance, and Kevin Fitzgerald.  The notable facts, as identified and stated by NBT are that (1) Option One was listed as a payee on the insurance check solely because of Option One's mortgage interest, (2) the check was never intended for payment to Option One outright and the inclusion of Option One as a signatory was to allow them to monitor or participate in the repairs to the Fitzgeralds' house, (3) Kevin Fitzgerald was told by a representative of Nationwide Insurance to deposit the check and hire a contractor, and (4) Mr. Fitzgerald deposited the check and then contracted with "Eagle Crest Homes," paying them thirty-two thousand dollars ($32,000.00) as a down payment for reconstruction of his home.  NBT also argues that Mr. Fitzgerald testified that Option One made no inquires into Mr. Fitzgerald's efforts to secure a contractor and did not communicate any objection or concerns to Mr. Fitzgerald concerning his use of the insurance proceeds.  (*Id.* at 2-3.)[1]

---

[1] The Court has reviewed the deposition testimony of both Mr. Senor and Mr. Fitzgerald appended to NBT's Brief in Support of its motion and believes NBT's characterization of this testimony is misleading.  First, the Court observes that Mr. Senor testified that Nationwide Insurance's normal procedure, in cases where a bank with a mortgage interest in a property was designated as a co-payee on a check for insurance proceeds, is to mail the check to the insured and advise them to contact their mortgage company. (Senor Dep., Doc. 93, Ex. 1, at 29:22-33:8.)  The Court also observes that Mr. Fitzgerald testified that he did not contact Option One after receiving the check even though he received correspondence containing Option One's contact information and that, in addition to the $32,000 he gave to an admittedly dubious contractor, Mr. Fitzgerald used the insurance proceeds to support his struggling small business, pay legal fees unrelated to this action, pay general living expenses, and to purchase a "monster truck." (Fitzgerald Dep., Doc. 93, Ex. 2, at 29:17-30:4; 31:17-33:15; 36:23-40:23.)

NBT's second argument in favor of the proposed discovery states that, in July 2007, roughly three months prior to filing the current action, Option One assigned its interest in the Fitzgeralds' property to Wells Fargo Bank, N.A. ("Wells Fargo"). On the basis of this assignment, NBT argues that they are entitled to probe how Option One has any standing to assert rights to the insurance proceeds at issue in this case.

NBT's third argument is that Option One has not properly registered to do business in the Commonwealth of Pennsylvania. According to NBT Pennsylvania statute prevents a corporation that has failed to register in Pennsylvania from prosecuting any litigation in Pennsylvania's courts. *See* 15 Pa. C.S.A. § 4141(a).

Finally, in its fourth argument, NBT argues that, because Option One brought suit pursuant to the Pennsylvania Uniform Commercial Code, 13 Pa. C.S.A. § 1101, *et seq*. ("UCC"), the appropriate measure of damages in this case is not the face value of the check, but the amount that Option One could have received and retained from the check if it had not been erroneously honored. (Def.'s Br. in Supp., Doc. 93, at 4.) This argument is based on NBT's characterization that Option One's Complaint makes no allegations of bad faith, but simply a failure to exercise ordinary care when Mr. Fitzgerald presented and NBT deposited the improperly endorsed check. NBT, thus, states that the appropriate measure of damages is dictated by 13 Pa. C.S.A. § 4103(e) which specifies:

> (e) MEASURE OF DAMAGES FOR FAILURE TO EXERCISE ORDINARY CARE.-- The measure of damages for failure to exercise ordinary care in handling an item is the amount of the item reduced by an amount that could not have been realized by the exercise of ordinary care. If there is also bad faith it includes any other damages the party suffered as a proximate consequence.

In short, NBT argues that "[Option One's] damages (if any) are expressly limited to what

Plaintiff could have recovered if it had been given an opportunity to endorse the Check." (*Id.*) In further support of this argument, NBT cites to two cases, *Weiler v. Marine National Bank*, 285 Pa. 23 (Pa. 1925), and *NBT Bank, N.A. v. First National Community Bank*, 287 F. Supp.2d 564 (M.D.Pa. 2003) (Vanaski, J.), two cases supporting the general measure fo damages principle stated in 13 Pa. C.S.A. § 4103(e).  Based on the alleged support provided by these cases and statutes, NBT states that it is entitled to probe: "(a) [sic] why and how Plaintiff has preserved standing to assert rights in the Check, despite the Assignment to Wells Fargo; (2) whether Mr. Fitzgerald's initial use of the Check's proceeds comported with Plaintiff's normal procedure for insurance repairs to mortgaged property, and/or whether NBT's erroneous honoring of the Check had any actual effect on how the proceeds were used by Mr. Fitzgerald; (3) what Plaintiff's actual out-of-pocket loss was (if any) that was caused directly by NBT's erroneous honoring of the Check; and (4) whether the underlying loan balance has been paid in full and thus prevents Plaintiff from further recovery . . . through its action on the Check, due to assignee Wells Fargo's failure to timely file a petition for fair market value despite Wells Fargo's foreclosure on the Fitzgerald's Property. . . ."  (Def.'s Br. in Supp., Doc. 93, at 6.)

In its opposition brief, Option One, once again, responds to NBT's arguments as a whole by stating that "this action involves the cashing (conversion) of a check" and that the information NBT seeks through the supplemental discovery  "is not relevant to the instant action, but only sought in bad faith to annoy, embarrass, or cause undue burden on Plaintiff."  (Pl.'s Br. in Opp., Doc. 96 at 3.) Option One, further represents that it has "fully responded to Defendant's discovery request," and has "turned over all documents to Defendant's counsel related to this action."  (Pl.'s Br. in Opp., Doc. 80, Ex. 1, at 3, 6.)  This

same representation was made during the oral argument held before the Court on February 20, 2009. Accordingly, Option One requests that the Court deny NBT's motions and enter a protective order to terminate or limit the scope of NBT's discovery to the cashing of the check. *See* Fed.R.Civ.P. 26(c) (identifying when discovery-related protective orders are appropriate).

### A.     Document Requests and Interrogatories Relating to NBT's First Argument

In order to identify the individual document requests and interrogatories corresponding to the various arguments presented, the Court has extensively reviewed NBT's supplemental document requests and interrogatories. Based on its review, the Court believes that supplemental document requests one, three, five, and six (*See* Supp. Doc. Req., Doc. 77, Ex. 2, at 5-6) and supplemental interrogatories seven through eighteen, twenty-two through twenty-seven, and thirty through thirty-one (*See* Supp. Interrogatories, Doc. 77, Ex. 3, at 11-22) are implicated by NBT's first line of argument.

In supplemental document request number one, NBT asks Option One to produce any and all training manuals that establish or set forth Option One's policies and/or procedures for collection, handling or administration of non-commercial mortgage accounts, and makes specific mention of "all section(s) detailing the steps and procedures Option One employees are to take in the event of damage to a property that is covered by insurance against which Option One holds a mortgage interest." (Supp. Doc. Req. at 5.) At the February 20, 2009 oral argument, NBT's counsel argued that this information was relevant to NBT's defense that Option One was aware of the fire and the insurance payment but negligently failed to oversee Mr. Fitzgerald's use of the money or otherwise take action for

eighteen (18) months. (Feb. 20, 2009 Transcript, at 26:3-7.) In other words "if what was done with the money was what would usually have been done with the money even if [Option One] signed [the check], then that should certainly reduce the value of [Option One's] damages." (*Id.* at 24:18-21.) In response, counsel for Option One labeled this request as a "fishing expedition" unrelated to the claim or defense. (*Id.* at 26:20-21.)

On the basis of the arguments and evidence presented in support and opposition of NBT's supplemental request, the Court finds that NBT has not provided good cause showing that the requested training or policy manuals are relevant to either the claim or defenses in this case. NBT admits that it cashed the insurance check without proper endorsement from Option One, but suggests that the requested manuals will potentially show that Option One was somehow negligent in its oversight of Mr. Fitzgerald or that standard operating procedure would have provided Mr. Fitzgerald with complete discretion over the funds even if NBT had not improperly cashed the insurance check. However, the Court has received evidence, much of which was provided by NBT in support of its current motions, clearly indicating that Mr. Fitzgerald and Option One were not in contact at the time he received the check or during the period when Mr. Fitzgerald disposed of the insurance funds. As Option One's counsel stated at oral argument, "[Mr. Fitzgerald] stated he was never in contact with Option One. That was quite clear. One reason is Option One didn't know where he was. Even he admitted he didn't know where he was." (*Id.* at 18:3-6.)

Thus, the evidence thus far presented has not established that Option One either knew or should have known that: (1) Mr. Fitzgerald had received a check, (2) that NBT had cashed that check even though it was not properly endorsed, and that (3) Mr. Fitzgerald was spending the insurance proceeds on a contractor that "sounded too good to be true," to

11

support his struggling small business, or to purchase a "monster truck." *See supra* note 1 and accompanying text. Thus, NBT's arguments rely solely on the speculation that Option One either did not attempt to locate Mr. Fitzgerald, or that if Option One *had* located Mr. Fitzgerald, their business practices and policies would have allowed him unfettered discretion to freely spend funds specifically designated to repair property that secured a note held by Option One. The Court finds such speculation too tenuous to support a finding of relevance, and will deny NBT's motion with respect to supplemental document request number one.

Supplemental document request number three seeks production of documents involving demand letters sent to any guarantors that involved the insurance check. (Supp. Doc. Req., at 5.) This request was specifically discussed in oral argument on February 20, 2009, at which time counsel for Option One represented to the Court that Option One had produced the entire loan file and that there were no guarantors. (Feb. 20, 2009 Transcript, at 28:11-31:12.) Based on this representation, the Court took notice that it was an established fact that there were no guarantors. (*Id.* at 31:13-14.) Thus, the Court will deny NBT's motion with respect to supplemental document request number three.

Supplemental document request number five requests all default or demand letters sent to Kevin Fitzgerald involving the note, the mortgage or the insurance check. (Supp. Doc. Req., at 5.) This request was specifically addressed at the oral argument held on February 20, 2009. At that time, Option One's counsel stated "I don't have them. I wouldn't have them. The foreclosure firm in New Jersey would have them, and [NBT's counsel] is welcome to subpoena them from them." (Feb. 20, 2009 Transcript, at 34:8-10.) Based on this representation by counsel that Option One is not in possession of any documents

sought in this request, the Court will deny NBT's motion with respect to supplemental document request number five.

Supplemental document request number six asks for all written communication between Option One, Nationwide Insurance Company, and Kevin Fitzgerald relating to Mr. Fitzgerald's use of some of the proceeds generated by the insurance check to hire a contractor. (Supp. Doc. Req., at 5-6.) As already discussed in great detail, the evidence presented to the Court indicates that Mr. Fitzgerald and Option One were not in contact during the time that Mr. Fitzgerald received and spent the improperly cashed check. Further, counsel for Option One stated in oral argument that "[Option One] turned over the comment history, the payment history, the loan documents, all information on the insurance checks. We turned over every piece of paper the we had except for the manuals of course." (Feb. 20, 2009 Transcript, at 29:7-10.) Since the evidence provided, along with the representation by Option One's counsel, imparts that the requested documents either do not exist or are already in the possession of NBT's counsel, the Court will deny NBT's motion with respect to supplemental document request number six.

Supplemental interrogatories seven through eighteen, twenty-two through twenty-seven, thirty, and thirty-one further seek information concerning (1) what would have happened differently if Option One had endorsed the check, and (2) how Option One has been damaged by Mr. Fitzgerald's use of the funds after NBT cashed the check without obtaining the proper endorsement. These interrogatories seek information concerning (1) the names and contact information of Option One employees responsible for handling the Fitzgerald account or communications about the insurance claim, (2) Option One's efforts to monitor Kevin Fitzgerald and any efforts to repair the property at issue, (3) when and how

13

Option One learned that Mr. Fitzgerald had received the check and allegedly hired a contractor, (4) any communications between Option One and Kevin Fitzgerald or Nationwide Insurance, (5) what Option One believes would have happened to the insurance funds had NBT properly obtained Option One's endorsement, and (6) what demands Option One has made upon any potential guarantors in this case. Thus, these interrogatories seek precisely the same information sought by NBT in supplemental document requests one, three, five, and six and, for the reasons set forth in greater detail, *supra*, the Court will deny NBT's motion with respect to each of these requests.

### B.   Document Requests and Interrogatories Relating to NBT's Second Argument

Having reviewed the supplemental requests made by NBT, the Court believes that supplemental document request seven and supplemental interrogatories four, five and nineteen through twenty-one are implicated by its argument that NBT should be allowed to probe whether Option One has standing to pursue the current action.

"[A]t an irreducible minimum, [Article III of the United States Constitution] requires the party who invokes the court's authority to show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant, and that the injury fairly can be traced to the challenged action and is likely to be redressed by a favorable decision." *Valley Forge Christian College v. Americans United For Separation of Church and State*, 454 U.S. 464, 472 (1982) (citations omitted). "The requirement that a party seeking review must allege facts showing that he is himself adversely affected . . . does serve as at least a rough attempt to put the decision as to whether review will be sought in the hands of those who have a direct stake in the outcome." *Id*. (quoting *Sierra*

*Club v. Morton*, 405 U.S. 727, 740 (1972).

NBT argues that it "is entitled to probe how [Option One] has any standing to assert rights in the Check despite Plaintiff unconditionally assigning away all such right as part and parcel of the Assignment to Wells Fargo." (Br. in Supp., at 3-4.) In the Court's view, questions concerning this assignment are not germane to the present action. Even if the Court assumes that, under the assignment, Option One will be required to turn any damages collected in this action over to Wells Fargo, the assignment does not alter the fact that Option One was a payee on a check that NBT improperly cashed without Option One's endorsement. Moreover, even if Wells Fargo were the assignee of the mortgage, it could not maintain an action against NBT on the check where Option One, and not Wells Fargo, was the payee. Thus, neither the fact that Option One assigned the underlying mortgage to Wells Fargo sometime after NBT cashed the check without endorsement, nor the possibility that Option One will pay Wells Fargo any damages it recovers, suggest that Option One was not harmed by NBT's failure require proper endorsement.

The Court also notes that, in the February 20, 2009 oral argument, NBT suggested that documents relating to the assignment are relevant in the current action because there is a possibility that the outstanding balance on Option One's loan to the Fitzgeralds was satisfied when Option One received consideration from Wells Fargo in exchange for the assignment. Thus, NBT suggests that, if Option One were awarded damages in the current case, Option One would be getting double recovery for the loss suffered when NBT improperly cashed the check. (Feb. 20, 2009 Transcript, at 40:13-20.) The Court asked if the assignment documents were contained in the loan file, and thus, produced from Option One to NBT (*Id.* at 39:8-9), and counsel for Option One represented to the Court that

15

these documents had been produced (*Id.* at 39:10).

Accordingly, since the Court does not find that the assignment raises any germane issue with respect to Option One's standing to pursue its claims against NBT, and since Option One's counsel has represented that the assignment records were included in the loan file already in NBT's possession, Plaintiff's motion to serve supplemental document request number seven and interrogatories four, five, nineteen, twenty, and twenty-one will be denied.

### C. Document Requests and Interrogatories Relating to NBT's Third Argument

Having reviewed the supplemental requests made by NBT, the Court believes that supplemental document requests two and four and supplemental interrogatories twenty-eight and twenty-nine are implicated by its argument that Option One is not properly registered to do business in the Commonwealth of Pennsylvania and prevented by statute from prosecuting any litigation in Pennsylvania's courts.

When this issue was raised at oral argument, the Court allowed NBT's counsel five days to provide the Court with case law stating that Option One cannot cure this defect by completing the appropriate registration with the Commonwealth of Pennsylvania.  On February 25, 2009, NBT's counsel submitted a letter to the Court helpfully summarizing the relevant case law and stating that "the Act [15 P.S. § 4141] allows a corporation to cure its failure to register by obtaining such registration, and the case law holds that: a foreign business corporation which instituted suit prior to obtaining a Certificate of Authority may nevertheless be permitted to continue such litigation if it becomes properly qualified under the Statue while the case is then still being prosecuted." (Feb. 25, 2009 Paul Letter, Doc.

16

98.) Since Option One may cure the defect identified by NBT during the pendency of this action, the Court will deny NBT's motion with respect to supplemental document requests two and four and supplemental interrogatories twenty-eight and twenty-nine.

### D. Document Requests and Interrogatories Relating to NBT's Fourth Argument

In many ways, NBT's fourth argument overlaps with its first argument that Option One's damages in the current case should be limited due to what hypothetically would have happened with the insurance proceeds if NBT had not failed to obtain proper endorsement for the insurance check. The fourth argument also renews the issue of standing raised by Option One's assignment of the mortgage involved in this case to Wells Fargo. As such, many of the document requests and interrogatories already discussed in previous sections of this memorandum are, once again, brought into issue here. NBT's fourth argument renews many of its earlier arguments, and the Court finds nothing in this fourth argument to refute the analysis set forth in prior sections of this memorandum. Accordingly, for the reasons already set forth in detail above, NBT's motion will be denied with respect to supplemental document requests one, three, five, and six and supplemental interrogatories seven through nineteen, twenty-two through twenty-seven, and thirty through thirty-one. Also, for the reasons already set forth in detail above, NBT's motion to serve additional document request number seven and interrogatories four, five, twenty, and twenty-one will be granted.

Furthermore, the Court believes that supplemental interrogatories one through three and supplemental interrogatory number six are implicated by NBT's fourth argument that Option One's damages are limited to the amount that could have been realized by the

17

exercise of ordinary care.  The Court believes that NBT has failed to provide good cause showing that the information requested in these interrogatories is relevant to either the claim or defenses in this case.  With respect to supplemental interrogatories one and two, the Court notes that neither NBT's motion (Doc. 77) nor supporting brief (Doc. 93) contains any mention of the so-called "New York Mortgage Company Assignment" that is at subject in the proposed interrogatories.  Accordingly, NBT has failed to demonstrate the relevance of this information and the Court will deny NBT's motion with respect to these interrogatories.  Interrogatories three and six involve the payment and balance history of the Fitzgeralds' account with Option One.  As already discussed, counsel for Option One represented in briefs responding to NBT's motions, and again in oral argument, that Option One has provided the entire loan file to NBT, including payment and balance history.  Thus, the Court finds that the proposed interrogatory seeks information already in NBT's possession, and for this reason, will deny NBT's motion with respect to supplemental interrogatories three and six.

## CONCLUSION

For the reasons set forth above, the Court will deny Defendant NBT's "Motion to Compel Discovery, Motion for Sanctions, Motion for Attorney Fees" (Doc. 72) and "Motion for Allowance to Serve Supplemental Discovery Requests Upon Plaintiff" (Doc. 77).

An appropriate order follows.


 March 11, 2009                            /s/ A. Richard Caputo
Date                                       A. Richard Caputo
                                           United States District Judge

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| OPTION ONE MORTGAGE CORPORATION, | CIVIL ACTION No. 3:07-cv-1877 |
| Plaintiff, | (JUDGE CAPUTO) |
| v. | |
| KEVIN FITZGERALD, ET AL., | |
| Defendants. | |

**ORDER**

Now, this  11th  day of March, 2009, it is **HEREBY ORDERED** that:

(1) Defendant NBT's "Motion to Compel Discovery, Motion for Sanctions, Motion for Attorney Fees" (Doc. 72) is **DENIED**.

(2) Defendant NBT's "Motion for Allowance to Serve Supplemental Discovery Requests Upon Plaintiff" (Doc. 77) is **DENIED**.

      /s/ A. Richard Caputo
      A. Richard Caputo
      United States District Judge