# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| OPTION ONE MORTGAGE CORPORATION, <br><br> Plaintiff, <br><br> v. <br><br> KEVIN FITZGERALD, JACQUELINE FITZGERALD, NBT BANK, N.A., and JP MORGAN CHASE BANK, N.A., <br><br> Defendants. | CIVIL ACTION NO. 3:07-CV-1877 <br><br> (JUDGE CAPUTO) |

## **MEMORANDUM**

Presently before the Court are Defendants' Motion for Summary Judgment (Doc. 102) and Plaintiff's Motion for Summary Judgment (Doc. 104). For the reasons outlined below, Plaintiff's Motion for Summary Judgment will be granted and Defendants' Motion for Summary Judgment will be denied. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332.

## **BACKGROUND**

Defendants Kevin and Jacqueline Fitzgerald ("the Fitzgeralds") purchased real property located at 424 Tomahawk Road, Paupack, Pennsylvania, and executed and delivered a mortgage securing a Note to New York Mortgage Company, who then transferred its interest in the mortgage to Plaintiff Option One Mortgage Corporation ("Option One"). (Doc. 102, Ex. D; Doc. 115, Attach. 1, Ex. I.) In accordance with the terms of the loan obligation, the Fitzgeralds had a hazard insurance policy for damage to their home and property on which Plaintiff was an additional beneficiary. (Doc 102, Ex. D; Doc. 115, Attach.

1, Ex. L.) The premises sustained fire damage on or about January 11, 2006, and thereafter, a loss draft check (Check No. 58320036, dated May 23, 2006) in the amount of One Hundred Thirteen Thousand, Six Hundred Thirteen Dollars ($113,613.00), made payable to "Kevin Fitzgerald and Jacqueline Fitzgerald and Option One Mrtg Corp" was issued by Nationwide Insurance. (Doc. 102, Ex. B, Senor Dep. 11:22-11:23, Jan. 9, 2009; Doc. 104, Attach. 2.) According to the terms of the mortgage agreement and Option One's business policy, the Fitzgeralds were to indorse the check and forward it to Plaintiff for its indorsement, after which Plaintiff would deposit the check into a trust account, disburse the funds as appropriate to monitor repairs, or keep the check and apply it to the remaining debt on the loan. (Doc. 102, Ex. D; Doc. 102, Ex. A, Clary Dep. 91:20-92:12, Feb. 19, 2009.)

On June 26, 2006, the Fitzgeralds deposited the check, which had been indorsed by the Fitzgeralds only, with Defendant NBT Bank. (Doc. 104, Attach. 2.; Doc. 92., Ex. B, Kevin Fitzgerald Dep. 24:23-25:23, Jan. 9, 2009; Doc. 115, Attach. 3, Jacqueline Fitzgerald Dep., 9:9-10:5, Jan. 9, 2009.) Plaintiff alleges that although, as a named payee, it was a necessary signor, Defendants NBT Bank and JP Morgan Chase Bank, N.A. ("JP Morgan") both honored the check without Plaintiff's indorsement, paying its entire proceeds to the Fitzgeralds without Plaintiff's knowledge, consent, or authority. (*Id.* ¶¶ 20-22, 46, 66.) Plaintiff alleges that as a result of this action and the damage to the Premises, Plaintiff has no security in the loan obligation. (*Id.* ¶¶ 22-23.) Plaintiff alleges that NBT Bank has failed and/or refused to remit the amount of the check to Plaintiff.

In June 2007, Option One assigned its rights in the Fitzgeralds' mortgage to Wells Fargo Bank ("Wells Fargo"). (Doc. 102, Ex. F.) Some time in 2008, Option One sold most of its assets, including its servicing platform to American Home Mortgage Servicing, Inc.

("American Home"). (Clary Dep. 5:25-8:5; Doc. 115, Attach. 2.) On November 21, 2008, Wells Fargo executed a Limited Power of Attorney giving American Home the power to "take any and all appropriate action" to service loans in the name of Wells Fargo. (Doc. 115, Attach. 1, Ex. U.)

On April 27, 2007, Wells Fargo filed a foreclosure action on the Fitzgeralds' property in the Wayne County Court of Common Pleas. (Doc. 102, Ex. G.) Wells Fargo was the winning bidder at the Sheriff's Sale, buying the property for Two Thousand, Seven Hundred Forty-Eight Dollars and Seventy Cents ($2,748.70). Wells Fargo did not file a petition to establish the property's fair market value, as required by the Pennsylvania Deficiency Judgment Act, and the Fitzgeralds filed a petition to have their debt marked as fully satisfied. (Doc. 102, Ex. I.) On July 9, 2009, the debt was marked as satisfied in full by court order of the Wayne County Court of Common Pleas. (Doc. 102, Ex. J.)

Plaintiff's original complaint alleged claims of Conversion (Count I) and Fraud (Count II) against the Fitzgeralds, and claims of Conversion under 13 PA. CONS. STAT. ANN. § 3420 against NBT Bank (Count III) and JP Morgan (Count IV). (Doc. 1.) Defendant NBT Bank filed a Motion to Dismiss, which this Court denied on June 9, 2008. (Docs. 5, 20.) Plaintiff filed its Amended Complaint on November 3, 2008, adding a Breach of Contract against the Fitzgeralds (Count V). On February 5, 2009, this Court entered a Default Judgment against the Fitzgeralds for One Hundred Thirteen Thousand, Six Hundred One Dollars ($113,601.00) for failing to answer the amended complaint. (Doc. 94.) Plaintiff and Defendants both filed Motions for Summary Judgment on July 27, 2009. (Doc. 102, 104.) All current motions have been fully briefed and are now ripe for disposition.

## LEGAL STANDARD

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). A fact is material if proof of its existence or nonexistence might affect the outcome of the suit under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Where there is no material fact in dispute, the moving party need only establish that it is entitled to judgment as a matter of law. Where, however, there is a disputed issue of material fact, summary judgment is appropriate only if the factual dispute is not a genuine one. *Id.* An issue of material fact is genuine if "a reasonable jury could return a verdict for the nonmoving party." *Id*.

Where there is a material fact in dispute, the moving party has the initial burden of proving that: (1) there is no genuine issue of material fact; and (2) the moving party is entitled to judgment as a matter of law. *See* CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D § 2727 (2d ed. 1983). The moving party may present its own evidence or, where the nonmoving party has the burden of proof, simply point out to the Court that "the nonmoving party has failed to make a sufficient showing of an essential element of her case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party, and the entire record must be examined in the light most favorable to the nonmoving party. *White v. Westinghouse Elec. Co.*, 862 F.2d 56, 59 (3d Cir. 1988).

4

Once the moving party has satisfied its initial burden, the burden shifts to the nonmoving party to either present affirmative evidence supporting its version of the material facts or to refute the moving party's contention that the facts entitle it to judgment as a matter of law. *Anderson*, 477 U.S. at 256-57.

The Court need not accept mere conclusory allegations, whether they are made in the complaint or a sworn statement. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). In deciding a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

# DISCUSSION

## I. DEFENDANTS' MOTION

Defendants move for summary judgment, arguing that 1) Plaintiff's rights to the insurance proceeds were extinguished when the underlying debt on the property was marked as satisfied in full, 2) Plaintiff is prevented from demanding attorney's fees,[1] and 3) that Plaintiff lacks standing and is barred from bringing suit because it is not registered to do business in Pennsylvania.

### A. The Deficiency Judgment Act

In 1941 Pennsylvania passed its Deficiency Judgment Act ("DJA"), 42 PA. CONS. STAT. ANN. § 8103 *et seq.*, to remedy the Depression-Era practice of execution creditors buying properties at Sheriff's Sales for nominal fees, gaining title to the property, and still

---

[1] The issue of attorney's fees will be addressed more fully in this Court's calculation of damages *infra*.

5

being able to hold the debtor responsible for the difference between the outstanding debt and the nominal purchase price. *See First Pennsylvania Bank v. Lancaster County Tax Claim Bureau*, 470 A.2d 938, 942 (Pa. 1983) (describing reasoning behind DJA); *see also First Federal Savings and Loan Assoc. Of Carnegie v. Keisling*, 746 A.2d 1150, 1155 (Pa. Super. 2000) (citations omitted) (same); *Hoffman Lumber Co. v. Mitchell*, 85 A.2d 664, 666 (Pa. Super. 1952) (same). The relevant portions of the DJA in the instant case is section § 8103(a), (d), which states:

> (a) GENERAL RULE.-- Whenever any real property is sold, directly or indirectly, to the judgment creditor in execution proceedings and the price for which such property has been sold is not sufficient to satisfy the amount of the judgment, interest and costs and the judgment creditor seeks to collect the balance due on said judgment, interest and costs, the judgment creditor shall petition the court to fix the fair market value of the real property sold. The petition shall be filed as a supplementary proceeding in the matter in which the judgment was entered. If the judgment was transferred from the county in which it was entered to the county where the execution sale was held, the judgment shall be deemed entered in the county in which the sale took place.
>
> (d) ACTION IN ABSENCE OF PETITION.-- If the judgment creditor shall fail to present a petition to fix the fair market value of the real property sold within the time after the sale of such real property provided by section 5522 (relating to six months limitation), the debtor, obligor, guarantor or any other person liable directly or indirectly to the judgment creditor for the payment of the debt, or any person interested in any real estate which would, except for the provisions of this section, be bound by the judgment, may file a petition, as a supplementary proceeding in the matter in which the judgment was entered, in the court having jurisdiction, setting forth the fact of the sale, and that no petition has been filed within the time limited by section 5522 to fix the fair market value of the property sold, whereupon the court, after notice as prescribed by general rule, and being satisfied of such facts, shall direct the clerk to mark the judgment satisfied, released and discharged.

42 PA. CONS. STAT. ANN. § 8103(a),(d).

In *Horbal v. Moxham National Bank*, 548 Pa. 39 (Pa. 1997), the Pennsylvania Supreme Court decided whether a Certificate of Deposit ("CD") that was assigned to the

6

bank by the mortgagor as additional security for the loan could be liquidated and applied to the remaining debt on a mortgage after the bank bought the property for a nominal sum at a Sheriff's Sale and neglected to petition to fix the fair market value of the house. In *Horbal*, the Pennsylvania Supreme Court held that the bank could liquidate the CD and apply the proceeds to the outstanding loan balance, reasoning that the DJA was designed only to protect a debtor's personal assets at the date of the Sheriff's Sale. 697 A.2d at 582-83. The bank became vested in all rights to the CD when the assignment documents were executed, and, therefore, the CD was not a personal asset of the debtor at the time of the Sheriff's Sale. *Id.* Thus, the DJA did not apply and the bank was free to liquidate the CD as per the assignment. *Id.* at 583. The court also based its decision on public policy, reasoning that providing creditors with such protection "encourage[s] lending and increase[s] the ability t obtain a properly secured loan." *Id.*

Defendants argue that the DJA should apply to the insurance proceeds and, as a result, Plaintiff's rights in the insurance proceeds extinguished when the Fitzgeralds' debt was marked as satisfied in full. However, the instant case is more similar to the case in *Horbal* than any of the cases cited by Defendants to support the proposition that the DJA is applicable. Like the CD in *Horbal*, the insurance check was not a personal asset of the Fitzgeralds at the time of the Sheriff's Sale. Plaintiff's rights in the insurance check vested at the time it was issued; Option One was a named co-payee on the front of the check, the mortgage agreement provided that the Fitzgeralds were obligated to turn the check over to Option One, who had sole and absolute discretion about how to apply the funds, and Option One was listed as an "additional interest" on the insurance policy. Moreover,

7

because the check was made out to the Fitzgeralds *and* Option One, the Fitzgeralds were non-alternative co-payees and therefore did not have a right to deposit the check without having it indorsed by all other payees, including Plaintiff. That is the say, at the time the check was issued, the Fitzgeralds had no rights in the check without Plaintiff's indorsement, which was never received. Thus, Plaintiffs are not seeking to recover the debtor's personal assets after the debt was marked as satisfied in full, but are trying to recover the proceeds of an instrument that was rightfully theirs at the time it was issued. These rights vested well before the foreclosure on the Fitzgeralds' property and are not affected by the Sheriff's Sale. Therefore, the DJA does not apply in this case and Plaintiff's claims on the check were not extinguished by virtue of the Satisfaction Order.

Furthermore, this decision is consistent with the policy argument articulated by the Pennsylvania Supreme Court in *Horbal*. Mortgage clauses that require homeowners to procure hazard insurance with the creditor as a named beneficiary protect creditors from situations where a homeowner simply walks away from a large mortgage debt after the home is damaged or destroyed. If the DJA applied in such a situation, creditors would have to foreclose on the property, buy it for the a nominal price, and either a) hope to make the outstanding loan amount back on the sale of the property that has had its value drastically reduced by the destroyed dwelling, b) undertake the cost of rebuilding on the property, and hope that this raises the price of the property enough to cover the cost of both rebuilding on the property and the outstanding loan amount, or c) petition to fix the fair market value of a possibly worthless piece of property, apply that amount to the outstanding loan, and try to recover the difference from a potentially judgment-proof plaintiff. The insurance proceeds protect the creditor and debtor both by giving the

8

creditor the option of applying the funds to the outstanding debt, thereby securing the creditor and relieving the debtor of his obligations, or dispersing the money to the debtor so that he can repair his destroyed home. Thus, the policy justifications behind the holding in *Horbal* are equally applicable to the facts of this case. Because the DJA is not applicable to the current case, Defendants' Motion for Summary Judgment on this ground will be denied.

### B. PLAINTIFF'S STANDING

Pursuant to 15 PA. CONST. STAT. ANN. § 4141(a), a foreign corporation cannot bring suit in Pennsylvania unless it is registered to do business in Pennsylvania, nor may suit be brought by a successor corporation "until a certificate of authority has been obtained by the corporation or by a corporation that has acquired all or substantially all of its assets." If a corporation is not properly registered to do business in Pennsylvania when it initiates its suit, "compliance with the registration statute during the course of the lawsuit is sufficient to entitle a foreign corporation to continue its prosecution of that lawsuit." *International Investors, Inc. v. Berger*, 363 A.2d 1262, 1264 (Pa. Super. 1976).

In this case, Defendants have certainly created a genuine issue of fact regarding Option One's registration at the outset of this case. However, the record reveals no issue of material fact that American Home is the successor corporation to Option One, has obtained substantially all of Option One's assets, and that American Home is registered to do business in Pennsylvania. Therefore, Plaintiff has cured any defect that might have existed when it filed suit and has standing to bring this suit and Defendants' Motion for Summary Judgment on this ground will be denied.

## II.     PLAINTIFF'S MOTION

Plaintiff brings its conversion claim against NBT Bank pursuant to 13 PA. CONS. STAT. ANN. § 3420, which provides:

> The law applicable to conversion of personal property applies to instruments.  An instrument is also converted if it is taken by transfer, other than a negotiation, from a person not entitled to enforce the instrument or a bank makes or obtains payment with respect to the instrument for a person not entitled to enforce the instrument or receive payment.  An action for conversion of an instrument may not be brought by the issuer or acceptor of the instrument or a payee or indorsee who did not receive delivery of the instrument either directly or through delivery to an agent or a copayee.

13 PA. CONS. STAT. ANN. § 3420(a).

The statute recognizes "delivery to an agent or a copayee" as delivery for purposes of a payee's right to bring a conversion claim.  *See* 13 PA. CONS. STAT. ANN. § 3420(a); *see also Dowana & Helping Hand Staffing, Inc. v. Boykai & Citizens Bank, N.A.*, No. 01409, 2007 Phila. Ct. Com. Pl. LEXIS 248, at *3 (Phila. Com. Pl., July 18, 2007) ("HHS was allegedly the 'payee.'  HHS may assert a conversion claim [under 13 PA. CONS. STAT. ANN. § 3420] only if HHS alleges that the checks were delivered to it or its agent or co-payee.  Plaintiffs claim that the checks were delivered to Boykai, who was acting as an agent. . . . Therefore, plaintiffs may assert a claim for conversion against [the bank].") The check for the insurance proceeds qualifies as an "instrument." 13 PA. CONS. STAT. ANN. § 3104. Additionally, the official comment to the identically-worded Uniform Commercial Code § 3-240, which appears as the commentary to 13 PA. CONS. STAT. ANN. § 3420, explains that "[i]f a check is payable to more than one payee, delivery to one of the payees is deemed to be delivery to all of the payees."  U.C.C. § 3-240, cmt. 2.

10

The official comments for this section also clearly explain how the conversion section works in situations like the one at bar. It provides that:

> "[The statute] also covers cases in which an instrument is payable to two persons and the two persons are not alternative payees, e.g. a check payable to John and Jane Doe. Under Section 3-110(d) the check can be negotiated or enforced only by both persons acting jointly. Thus, neither payee acting without the consent of the other, is a person entitled to enforce the instrument. If John indorses the check and Jane does not, the indorsement is not effective to allow negotiation of the check. *If Depositary Bank takes the check for deposit to John's account, Depositary Bank is liable to Jane for conversion of the check if she did not consent to the transaction.*"

U.C.C. § 3-240, cmt. 1 (emphasis added).

Furthermore, under 13 PA. CONS. STAT. ANN. § 3110(d), "[i]f an instrument is payable to two or more persons not alternatively, it is payable to all of them and may be negotiated, discharged or enforced only by all of them." Whereas a check "payable to X or Y" is payable to either alternatively, one "payable to X and Y" is payable to those payees "not alternatively." *See* UCC § 3-110, cmt. 4 (appearing as commentary to 13 PA. CONS. STAT. ANN. § 3110).

In the instant case, the check was plainly made out to "Kevin Fitzgerald and Jacqueline Fitzgerald and Option One Mrtg Corp." Thus, all three of the parties named on the check were non-alternative payees, and therefore the check could not be negotiated or enforced by any of them unless they all agreed. The Fitzgeralds were not entitled to enforce the check and demand payment unless it received the approval of Option One. Nonetheless, the Fitzgeralds indorsed the check and deposited it with NBT Bank, who accepted the check without Option One's necessary indorsement. Therefore, NBT made payment with respect to an instrument to a person who was not entitled to

11

enforce the instrument or receive payment, falling squarely within the purview of § 3420. Moreover, there is no genuine issue of material fact regarding delivery of the check to the Fitzgeralds, who were co-payees. The Fitzgeralds admit receiving the check and spending the proceeds on failed construction attempts, living expenses, and a monster truck. Therefore, there is no genuine issue of material fact on the conversion counts and the Plaintiff is entitled to judgment as a matter of law because Defendants made payment to a person not entitled to enforce an instrument that had been delivered to one of the co-payees. Plaintiff's motion for summary judgment will be granted.

## III. DAMAGES

Plaintiff's Complaint seeks damages in the amount of One Hundred Thirteen Thousand Six Hundred Thirteen Dollars ($113,613.00), attorneys fees and interest. Each of these measures of damages will be discussed below.

### A. Principal Amount

According to 13 PA. CONS. STAT. ANN. § 3420(b), the measure of damages for the conversion of a negotiable instrument, such as a check, is "presumed to be the amount payable on the instrument." Defendants argue that the amount recoverable is actually the amount that the Plaintiff could have received had Defendants not erroneously held the check, citing 13 PA. CONS. STAT. ANN. § 4103(e) as support. However, the heading for that section of the statute is "measure of damages for failure to exercise ordinary care." Here, Plaintiff is alleging that Defendants converted the check, not that Defendants failed to act with ordinary care or were negligent in any way.

12

13 PA. CONS. STAT. ANN. § 3420(a) states that "The law applicable to conversion of personal property applies to instruments." Under Pennsylvania law, "conversion is the deprivation of another's right of property in, or use or possession of, a chattel, or other interference therewith, without the owner's consent and without lawful justification." *Stevenson v. Economy Bank of Ambridge*, 197 A.2d 721, 726 (Pa. 1964). Nothing in this definition requires Plaintiff to show a lack of ordinary care. Therefore, the proper measure of damages is the amount payable on the check. The Defendants do not allege that any of the proceeds of the check were ever paid to Plaintiffs by the Fitzgeralds of the Defendants. Thus, the Defendants have not overcome the presumption contained in 13 PA. CONS. STAT. ANN. § 3420(b), and Plaintiffs are entitled to One Hundred Thirteen Thousand Six Hundred Thirteen Dollars ($113,613.00) in damages.

### B. Attorney's Fees

In Pennsylvania, a litigant cannot recover attorney's fees unless there is express statutory authorization, an agreement between the parties, or some other exception. *Trizechahn Gateway v. Titus*, 976 A.2d 474, 482-83 (Pa. 2009). As noted above, the Pennsylvania statute covering conversion of negotiable instruments limits the amount recoverable to the amount payable on the instruments. *See* 13 PA. CONS. STAT. ANN. § 3420(b). In other subsections within the same chapter of the Pennsylvania Code, the Legislature allowed for the recovery of expenses. *See* 13 PA. CONS. STAT. ANN. §§ 3416-17 (allowing recovery of expenses for breach of transfer and presentment warranties on negotiable instruments). Pennsylvania courts have interpreted the word "expenses" to include attorney's fees within the context of the U.C.C., as adopted by Pennsylvania. *See*

13

*Pavex, Inc. v. York Federal Savings and Loan Assoc.*, 716 A.2d 640, 647 (Pa. Super. 1998) (holding that "expenses" includes attorney's fees, which are within discretion of court to award). Thus, if the Pennsylvania Legislature had intended for attorney's to be available under 13 Pa. Cons. Stat. Ann. § 3420(b), it knew how to add the appropriate language, as evidenced by the subsections almost immediately preceding the conversion statute. Therefore, Plaintiff is not entitled to attorney's fees because there is no statutory authorization for their award.

### C. Interest

Plaintiff also seeks prejudgment interest on the converted check. Prejudgment interest is considered "additional damages for loss of use of the money due as damages, during the lapse of time since the accrual of the claim." *Nedd v. United Mine Workers*, 488 F. Supp. 1208, 1213 (M.D. Pa. 1980) (internal quotations omitted). Such an award is considered a component of damages, not as interest "*eo nomine.*" *In re Jones Estate*, 162 A.2d 408, 417 (Pa. 1960) (citations omitted). Prejudgment interest was originally a matter of right only in cases where there was an obligation to pay a fixed amount of money, but this right was later extended to actions "involving damages ascertainable with mathematical precision." *Nedd*, 488 F. Supp. at 1213. The legal rate of interest in Pennsylvania is statutorily set at six percent (6%) per annum. 41 Pa. Cons. Stat. Ann. § 202. The method of calculation of prejudgment interest is generally simple interest, as opposed to compound interest. *Spang and Co. v. USX Corp.*, 599 A.2d 978, 984 (Pa. Super. 1991) (citations omitted). In cases of conversion, the amount of damages is "the market value of the converted property at the time of the conversion with interest to date

of recovery." *Plack v. Baumer*, 121 F.2d 676, 679 (3d Cir. 1941) (holding that defendant met requirement to account, and thus did not owe interest).

In the instant case, Plaintiff is entitled to prejudgment interest as a matter of right because the amount of damages can easily be ascertained with mathematical precision in light of the presumption in § 3420(b). Therefore, the principal on which the interest will accrue is the amount of One Hundred Thirteen Thousand, Six Hundred Thirteen Dollars ($113,613.00) payable on the check. On June 26, 2006, NBT Bank converted the check by accepting it and making payments to the Fitzgeralds, who were not entitled to enforce the check without indorsement by Option One. Thus, Plaintiff is entitled to the statutory interest rate of six percent (6%) from June 26, 2006 to the date that summary judgment is entered.

Simple interest is calculated by multiplying the principal, the interest rate, and the time in years. In this case, the principal is One Hundred Thirteen Thousand, Six Hundred Thirteen Dollars ($113,613.00), the interest rate is six percent (6%) per annum, and the amount of time elapsed is three (3) years and fourteen (16) weeks, which is approximately 3.31 years. This yields a simple interest amount of Twenty-Two Thousand, Five Hundred Sixty-Three Dollars and Fifty-Four Cents ($22,563.54). Plaintiffs are entitled to that amount in prejudgment interest, which will be added to the principal amount owed.

## CONCLUSION

For the foregoing reasons, the Court will deny Defendants' Motion for Summary Judgment and grant Plaintiff's Motion for Summary Judgment.

An appropriate order follows.

October 15, 2009 /s/ A. Richard Caputo
Date A. Richard Caputo
United States District Judge

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| OPTION ONE MORTGAGE CORPORATION,<br><br>Plaintiff<br><br>v.<br><br>KEVIN FITZGERALD, JACQUELINE FITZGERALD, NBT BANK, N.A., and JP MORGANCHASE BANK, N.A.,<br><br>Defendants. | CIVIL ACTION NO. 3:07-CV-1877<br><br>(JUDGE CAPUTO) |

## ORDER

Now, this  15th  day of October, 2009, it is **HEREBY ORDERED** that :

(1) Defendants' Motion for Summary Judgment (Doc. 102) is **DENIED**.

(2) Plaintiff's Motion for Summary Judgment (Doc. 104) is **GRANTED.**

(3) **JUDGMENT IS ENTERED** against Defendants and in favor of Plaintiff in the amount of One Hundred Thirty-Six Thousand, One Hundred Seventy-Six Dollars and Fifty-Four Cents ($136,176.54), together with costs.

                                                            /s/ A. Richard Caputo
                                                            A. Richard Caputo
                                                            United States District Judge